## A02A1183. HIGHTOWER v. THE STATE.
### (570 SE2d 22)

BLACKBURN, Chief Judge.

Bo Rodley Hightower appeals his conviction by a jury of statutory rape, child molestation, and cruelty to children in the first degree. He argues that the trial court erred in: (1) denying his motion for directed verdict on the charge of cruelty to children; (2) charging the jury on the definition of a crime; (3) instructing the jury that proof of force is not necessary to establish a charge of statutory rape; and he further argues that (4) the State failed to establish venue for the charges of child molestation and cruelty to children. The trial court erred in denying Hightower's motion for directed verdict on the charge of cruelty to children, and we reverse that conviction; we affirm the remaining convictions.

1. We first address Hightower's assertion that the trial court erred in denying his motion for directed verdict as to the charge of cruelty to children in the first degree. He contends that the State failed to present sufficient evidence to support his conviction as charged in the indictment. We agree.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Hightower] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The standard for reviewing a denial of a motion for a directed verdict of acquittal is whether under the rule of *Jackson v. Virginia*,[1] the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. Moreover, the test established in *Jackson* is the proper test for us to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed ver-

[1] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

dict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence.

*Chastain v. State.*[2]

OCGA § 16-5-70 (b) provides that a "person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." "[T]he basic elements of the offense must be shown by evidence. That is, there must be evidence establishing the age of the child, that the child suffered physical or mental pain, that the pain was cruel or excessive, that the defendant caused the pain, and that the defendant acted maliciously in so doing." *Brewton v. State.*[3] Count 3 of the indictment alleged only mental pain, stating that Hightower "did maliciously cause S. G., a child under 18 years of age, cruel mental pain and excessive mental pain by engaging in sexual intercourse with said child with intent to cause said child to get pregnant while professing that he loved said child."

At trial, S. G., the victim in this case, testified that she met Hightower in May 2000, while visiting her father. She was 14 years old at the time, and Hightower was 25. Hightower obtained S. G.'s phone number and called her a week later. Hightower also visited S. G. at her home when her mother and stepfather were at work. A romantic relationship developed, with both S. G. and Hightower testifying that they had fallen in love. In the middle of July, their relationship became sexual. S. G. testified that the regular sex she had with Hightower was voluntary and that her father, aunt, and grandmother knew of the relationship.

S. G. and Hightower began to talk of marriage and having a home together; Hightower started giving S. G. money to save for the purchase of a wedding ring. S. G. and Hightower both testified that S. G. wanted to get pregnant and have a baby, that Hightower had told her that she was too young to be a mother, but that she had finally changed his mind about having a child.

After S. G.'s mother called the police and told them of her daughter's relationship with Hightower, Hightower was arrested. A police officer testified that, after Hightower had been given his *Miranda* warning, Hightower gave a statement in which he admitted his relationship with S. G., but said that he was in love with her and wanted to marry her.

Hightower learned that S. G. was pregnant after his arrest. He continued to say that he wished to marry S. G. After the baby was born, Hightower went to the hospital, where he signed the birth cer-

---

[2] *Chastain v. State*, 239 Ga. App. 602-603 (1) (521 SE2d 657) (1999).
[3] *Brewton v. State*, 266 Ga. 160 (1) (465 SE2d 668) (1996).

tificate and indicated his intention to support the child. S. G. took a picture of Hightower holding the baby and gave the baby Hightower's surname. Another picture of the baby, along with text beginning "Congratulations to S. and Bo Hightower who had a baby girl," was published in the local newspaper. Hightower testified that he still wants to marry S. G. and intends to support his child.

On cross-examination, S. G. testified that Hightower had never caused her either physical or mental pain. In an effort to show that Hightower had caused S. G. pain, the prosecution questioned S. G. as follows:

> Prosecutor: [S. G.], the term of your pregnancy, you had pain during that, didn't you?
> S. G.: Yes, but it was good pain.
> Prosecutor: And the birth of the child, you had pain with that, didn't you?
> S. G.: Yes.
> Prosecutor: Matter of fact, you've had some sleepless nights or troubled days and nights because of this thing, haven't you?
> S. G.: Yes.
> Prosecutor: Caused a lot of stress between you and your mother? Would that be fair to say that?
> S. G.: I don't — I couldn't say that; not that he caused it.

This was the only evidence at trial that S. G. suffered any pain, physical or mental, because of her relationship with Hightower.

While S. G. experienced stress in her relationship with her mother, she denied that it was caused by Hightower. S. G.'s admission that she had suffered pain during pregnancy and childbirth, which she describes as "good pain," and had lost sleep is not sufficient to support a conviction of cruel or excessive mental pain. To find otherwise on the evidence presented here, would be to render this element of the crime meaningless.

We recognize that "[w]hat constitutes cruel or excessive physical or mental pain must be resolved by a jury." *Alford v. State*.[4] But, "[o]n the pole with which we are concerned here (and will be whenever there is an appeal from a conviction), there will be instances where the law would not countenance a finding of cruel or excessive pain." *Sims v. State*.[5] This is such an instance.

---

[4] *Alford v. State*, 243 Ga. App. 212, 214 (3) (534 SE2d 81) (2000).
[5] *Sims v. State*, 234 Ga. App. 678, 679 (1) (a) (507 SE2d 845) (1998).

As for the element of malice, this Court has explained:

For purposes of this Code section, malice in the legal sense[ ] imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense. Intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.

(Punctuation omitted.) *Brewton*, supra at 161 (2).

We view the testimony here in a light most favorable to the verdict and assume that Hightower caused the pain. Nonetheless, the evidence is insufficient to support the finding that Hightower acted maliciously in causing S. G. pain. The indictment charged Hightower with maliciously causing S. G. "cruel mental pain and excessive mental pain by engaging in sexual intercourse with said child with intent to cause said child to get pregnant while professing that he loved said child." There was no evidence presented at trial that Hightower acted with the malicious intent to cause S. G. mental pain when he had sexual relations with her. Cf. *Sims*, supra (finding sufficient evidence that defendant maliciously caused children to suffer cruel or excessive mental pain where defendant threatened to kill their mother with a knife, made them look at her after she had been stabbed multiple times, forced them to ride around in car as their mother continued to bleed, and then abandoned them and their mother in the middle of the night). The evidence was insufficient to prove either that S. G. suffered cruel or excessive mental pain or that Hightower maintained his relationship with S. G. with the malicious intent to cause her pain. This charge requires more than the fact of a sexual relationship with a minor, because otherwise, every incident of statutory rape would also constitute the crime of cruelty to children. Under such circumstance the charges would merge as a matter of law. Under these facts, Hightower's conviction for cruelty to children must be reversed.

2. Hightower next asserts that the trial court should not have instructed the jury that proof of force is not necessary to establish a charge of statutory rape. This enumeration of error is without merit. "Acts of force are irrelevant in a statutory rape case. It is the act of

sexual intercourse and the age of the female that constitute the crime of statutory rape." *Claitt v. State.*[6]

3. In charging the jury, the trial court stated: "A crime is a violation of a statute of this state in which there is joint operation of an act, or omission to act, and intention or criminal negligence." Hightower argues that because none of the charges in the indictment can be proved by criminal negligence, the inclusion of this language improperly allowed the jury to consider criminal negligence in lieu of making a finding that he intended to commit the acts charged in the indictment.

The trial court gave a general charge on what constitutes a crime. Given our reversal of the conviction of cruelty to children, Hightower's argument as to that crime is moot. Given Hightower's admission that he had sexual relations with S. G., a minor, his conviction for statutory rape was not based on a finding of criminal negligence. *Fields v. State.*[7] Accordingly, any error in this charge was harmless.

4. In enumerations of error 4 and 5, Hightower maintains that the State failed to establish venue for the crimes of child molestation and cruelty to children in Pickens County. A review of the record reveals that this enumeration is without merit.

"Venue is an essential element of a crime, and the state has the burden of proving venue beyond a reasonable doubt whenever a criminal defendant pleads not guilty." *Stover v. State.*[8] "[C]ircumstantial as well as direct evidence may be used to establish venue. Venue is a question to be decided by the jury, and its decision will not be set aside as long as there is any evidence to support it." (Punctuation omitted.) *Render v. State.*[9]

Hightower was charged with committing the crime of child molestation in Pickens County between October 28, 2000, and November 11, 2000, and with committing the crime of cruelty to children in the first degree in Pickens County between July 1, 2000, and October 28, 2000. S. G. testified that she talked with Hightower about becoming pregnant "later on" in their relationship, and that their relationship came to an end around the end of November 2000. When asked if she had made any special efforts to get pregnant, S. G. indicated that she and Hightower had tried through repeated sex to get pregnant and that these efforts had occurred at her house. Testimony established that S. G. lived with her mother and that her mother's house was in Pickens County. The baby was born on August

---

[6] *Claitt v. State*, 154 Ga. App. 727 (270 SE2d 34) (1980).
[7] *Fields v. State*, 258 Ga. 595, 596 (372 SE2d 811) (1988).
[8] *Stover v. State*, 251 Ga. App. 215 (554 SE2d 221) (2001).
[9] *Render v. State*, 240 Ga. App. 797 (525 SE2d 368) (1999).

23, 2001. Viewed in the light most favorable to the verdict, this testimony was sufficient to prove that the crimes occurred in Pickens County during the time periods alleged in the indictment. Given our reversal of the cruelty to children conviction, Hightower's argument as to that count is moot.

*Judgment affirmed in part and reversed in part and case remanded. Johnson, P. J., and Miller, J., concur.*

DECIDED JULY 29, 2002.

*Martin & Associates, Benny M. Martin, Nancee E. Tomlinson,* for appellant.

*Roger G. Queen, District Attorney, Darrell E. Wilson, Assistant District Attorney,* for appellee.